James P. Ricciardi
Dion W. Hayes
Patrick L. Hayden
Marshall Beil
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

Counsel to Quad-C Partners IV, L.P. and Quad-C Partners VI, L.P.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| HEARTLAND AUTOMOTIVE HOLDINGS, | ) | Case No. 08-40047-dml-11 |
| INC., et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | **(Pending in the U.S. Bankruptcy** |
| | ) | **Court, Northern District of Texas,** |
| | ) | **Fort Worth Division)** |
| | ) | |
| | ) | Bankr. SDNY |
| | ) | Miscellaneous Proceeding |
| | ) | No. 08-mp-00401 |

## MOTION OF QUAD-C PARTNERS IV, L.P. AND QUAD-C PARTNERS VI, L.P. TO WITHDRAW THE REFERENCE OF MOTION TO QUASH

Quad-C Partners IV, L.P. ("Quad-C IV") and Quad-C Partners VI, L.P. ("Quad-C

VI", and collectively as applicable with Quad-C IV, "Quad-C"), by and through their

undersigned counsel, hereby file this motion (the "Motion"), pursuant to 28 U.S.C. §

157(d), Fed.R.Bankr.P. 5011(a) and Local Bankruptcy Rule 5011-1, for entry of an order

withdrawing the Standing Order of Reference of this Court signed by Acting Chief Judge

Robert J. Ward dated July 10, 1984 (the "Reference"), providing for the automatic

referral of all bankruptcy matters, in regard to a motion to quash (the "Motion to Quash")

filed on July 14, 2008, a copy of which is appended hereto as Exhibit 1, and, in support

thereof, respectfully state as follows.

## Preliminary Statement

Quad-C VI is the largest shareholder of Heartland Automotive Holdings, Inc., a

holding company debtor with a group of debtor subsidiaries (collectively, the "Debtors"),

all of whose bankruptcy cases are pending in the United States Bankruptcy Court for the

Northern District of Texas (the "Texas Bankruptcy Court"). Jiffy Lube International, Inc.

("JLI") is the Debtors' franchisor. The Debtors filed motions pursuant to Section 365 of

the Bankruptcy Code pertaining to the assumption of numerous leases of real property

(the "Lease Motions"). A representative copy of one of the Lease Motions is attached to

the Motion to Quash as Exhibit A. JLI seeks discovery of Quad-C IV in regard to the

Lease Motions by means of a subpoena to provide testimony pursuant to Fed.R.Civ.P.

30(b)(6) (the "Subpoena"). JLI issued the Subpoena from the United States Bankruptcy

Court for the Southern District of New York (the "New York Bankruptcy Court"). A

copy of the Subpoena is attached to the Motion to Quash as Exhibit B.[1]

Quad-C is not a party to the Lease Motions. Nor has Quad-C consented to the

jurisdiction of the Texas Bankruptcy Court. JLI has essentially conceded that Quad-C is

not a party to the Lease Motions by serving the Subpoena on Quad-C as a non-party

pursuant to Fed.R.Bankr.P. 9016 and Fed.R.Civ.P. 45.

When testimony or documents are sought from a non-party in a proceeding taking

place in an Article I adjudicatory body (*i.e.*, a bankruptcy court), that body does not have

the power to compel testimony or document production from a non-party absent that

---

[1] The Subpoena was issued to Quad-C IV, and Quad-C IV filed the Motion to Quash. It is possible that JLI mistakenly issued the Subpoena to Quad-C IV, and intended to issue the Subpoena to Quad-C VI. Accordingly, Quad-C VI joins in the Motion to Quash and joins in the instant motion with Quad-C IV.

party's express consent.  Quad-C, as a non-party that has not consented to the jurisdiction of the Texas Bankruptcy Court, has the right to demand that the Motion to Quash be resolved by an Article III court, namely the United States District Court for the Southern District of New York (the "New York District Court").

### Factual Background

1.      In their bankruptcy filings, the Debtors state that they operate hundreds of Jiffy Lube quick oil change facilities throughout the United States pursuant to franchise agreements with JLI, and that they comprise the largest Jiffy Lube franchise in the United States.[2]

2.      The Debtors further explain that because of rising fuel costs, increased competition, disputes with JLI and increased debt service requirements, they filed voluntary petitions seeking protection under chapter 11 of title 11 of the United States Code on January 8, 2008.

3.      On June 27, 2008, the Debtors filed the Lease Motions.  The Lease Motions are to be heard by the Texas Bankruptcy Court on July 22, 2008.

4.      On July 2, 2008, JLI served the Subpoena on Quad-C IV in this district. The Subpoena purports to require an individual designated by Quad-C IV to attend a deposition in Texas pursuant to Fed.R.Civ.P. 30(b)(6) in connection with the Lease Motions. The Subpoena was issued by the New York Bankruptcy Court pursuant to Fed.R.Civ.P. 45.

---

[2]  As described in the Lease Motions, and in addition to being the franchisor of Jiffy Lube stores, JLI is also a landlord for certain of the Debtors in approximately 80 of the more than 400 leases of non-residential real property at issue in the Lease Motions.  It appears that the Lease Motions seek to assume the majority, if not all, of the leases under which JLI is the lessor.

5.    Quad-C seeks to have the Subpoena quashed for the reasons stated in the Motion to Quash.

## Relief Requested

6.    By the Subpoena, the Committee seeks deposition discovery from Quad-C, a non-party to the Lease Motions, and a non-party in the bankruptcy cases.  By this Motion, Quad-C seeks to have the reference of the Motion to Quash withdrawn from the New York Bankruptcy Court and heard by the New York District Court because, notwithstanding the Reference order, a bankruptcy court, as an Article I court, has no power to compel testimony from a non-party.

## Withdrawal of the Reference to the Bankruptcy Court

7.    The standing order of Reference refers to the bankruptcy courts "any or all cases arising under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" pursuant to 28 U.S.C. § 157(a).  Section 157(d) states, in relevant part, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its motion or on a timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

8.    While there is no statutory definition of "cause," avoiding the deprivation of Quad-C's constitutional right to have an Article III court determine whether to quash the Subpoena is by all measures sufficient cause to withdraw the Reference.

9.    The Supreme Court more than a century ago held that the "inquiry whether a witness before [a non-Article III] tribunal is bound to answer on a particular question . . . produce books, papers, etc. in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for

4

final determination." Interstate Commerce Commission v. Brimson, 154 U.S. 447, 485 (1894), *overruled on other grounds as recognized by* U.S. v. Gaudin, 515 U.S. 506, 520 (1995). Stated plainly, the Supreme Court determined that an inquiry as to the propriety of discovery directed to a non-party is an exercise of the judicial power of the United States within the exclusive province of Article III courts.

      10.    The Supreme Court has made this point with equal vigor when the Article I adjudicatory body is a bankruptcy court and not the Interstate Commerce Commission. As the plurality opinion in Northern Pipeline made clear, "the constitutional requirements for the exercise of the judicial power must be met at all stages of adjudication, and not only on appeal . . . ." Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86 & n.39 (1982).[3] The Northern Pipeline Court ruled unconstitutional those portions of the Bankruptcy Act of 1978 that purported to delegate to the bankruptcy courts broad authority to try all "civil proceedings arising under title 11 [the Bankruptcy title] or arising in or related to cases under title 11." 458 U.S. at 54 (quoting former 28 U.S.C. § 1471) (alteration and emphasis in the original). The Supreme Court struck down this broad grant of authority because it empowered bankruptcy courts to resolve disputes as to which the Constitution required an Article III court. See id.

      11.    In the years since Northern Pipeline, the ability of a district court to withdraw the reference has been the basis for saving the broad grant of jurisdiction to the bankruptcy courts, to, among other things, administer the case, decide claims and counter-claims against the estate, recover fraudulent transfers and preferences and decide motions to assume or reject leases. See 28 U.S.C. § 157(b)(2) (A) through (P). But

---

[3] As noted, it has long been undisputed that compelling testimony of non-parties is a quintessential exercise of (Article III) judicial power. Brimson, 154 U.S. at 485.

where this broad grant of power purports to exceed, in certain circumstances, the constitutional limits of an Article I court to decide matters involving non-parties, it is incumbent upon the referring district court to withdraw the reference to provide the non-party with its Article III rights.

12.     The Supreme Court has on several occasions reiterated this point.  See Langenkamp v. Culp 498 U.S. 42 (1990) (non-party defendant in preference action entitled to Article III court determination and jury trial, if right properly preserved under the pleading rules); Granfinanciera S.A. v. Nordberg, 492 U.S. 33 (1989) (same result as to fraudulent transfer defendant).

13.     Here, where Quad-C is not a party to the Lease Motions or the bankruptcy case, there can be no doubt that discovery may only be compelled from Quad-C thorough a proper proceeding in an Article III court.  In In re Orion Pictures Corp. 4 F.3d 1095, 1098-1099 (2d Cir. 1993), which involved a motion by a debtor to assume a contract, analogous to the Debtor/JLI dispute in the Lease Motions, the Second Circuit determined that even the counter-party to the contract, who had not filed a claim in the bankruptcy case, retained his rights to have the amount of damages existing under the breached contract, which the debtor sought to assume, determined by an Article III court.  The Second Circuit held that the bankruptcy court's sole function at the hearing was to review the debtor's business judgment in deciding whether to assume or reject the contract.  See id.

14.     Similarly, Quad-C has the right to insist on an Article III court's determination of the Motion to Quash including what testimony it must give, if any, in someone else's Article I dispute.  The Reference should be withdrawn.

6

**The Statutory Right of Appeal of a Bankruptcy Court's Decision to an
Article III Court Does Not Lessen the Right of a Non-Party to Have His
Discovery Dispute Heard in the First Instance by an Article III Court.**

15.     Although 28 U.S.C. § 158 gives jurisdiction to the district courts to hear

appeals (1) from final judgments, orders and decrees; (2) from interlocutory orders and

decrees, issued under section 1121 (d) [dealing with a debtors' exclusive periods]; and (3)

with leave of the court, from other interlocutory orders and decrees; the Supreme Court in

Northern Pipeline made it clear that where non-parties are concerned, "the constitutional

requirements for the exercise of judicial power must be met at all stages of adjudication,

and not only on appeal . . . [lest a bankruptcy judge] could issue final judgments, which

would be binding and enforceable even in the absence of an appeal." Northern Pipeline,

458 U.S. at 85-86 & n.38, 39.  It would be a deprivation of Quad-C's right to an Article

III inquiry into what testimony, if any, it must give as a non-party, to compel Quad-C to

seek relief in the bankruptcy court first where an order of a bankruptcy court would be

enforceable against it before an appeal could be heard (even assuming the district court

had jurisdiction at all on an appeal of a discovery order) and the offending order reversed.


        WHEREFORE, Quad-C Partners IV, L.P. and Quad-C Partners VI, L.P.

respectfully request that the New York District Court enter an order withdrawing the

Reference of the Motion to Quash and granting such other and further relief as such

Court deems just and proper.

Dated: July 15, 2008          _____/s/____Patrick L. Hayden_____
New York, New York            James P. Ricciardi
                              Dion W. Hayes
                              Patrick L. Hayden
                              Marshall Beil
                              McGUIREWOODS LLP
                              1345 Avenue of the Americas
                              New York, New York 10105
                              Telephone: (212) 548-2100
                              Telecopier: (212) 548-2150

                              Counsel to Quad-C Partners IV, L.P. and
                              Quad-C Partners VI, L.P.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| HEARTLAND AUTOMOTIVE HOLDINGS, INC., et al., | ) | Case No. 08-40047-dml-11 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | **(Pending in the U.S. Bankruptcy Court, Northern District of Texas, Fort Worth Division)** |
| | ) | |
| | ) | |
| | ) | |
| | ) | Bankr. SDNY |
| | ) | Miscellaneous Proceeding |
| | ) | No. 08-mp-00401 |

## CERTIFICATE OF SERVICE

I, Patrick L. Hayden, hereby certify that on the 15th of July 2008, I caused to be served a true and correct copy of the foregoing upon the address listed below by electronic mail and Federal Express.

Robin E. Phelan
Haynes & Boone LLP
901 Main St.
Suite 3100
Dallas, TX 75202
robin.phelan@haynesboone.com
*Counsel to Jiffy Lube International, Inc.*


    /s/   Patrick L. Hayden

# EXHIBIT 1

James P. Ricciardi
Patrick L. Hayden
Dion W. Hayes
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

Counsel for Quad-C Partners IV, L.P.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| HEARTLAND AUTOMOTIVE HOLDINGS, INC., et al., | ) ) ) | Case No. 08-40047-dml-11 |
| | ) | Jointly Administered |
| Debtors. | ) ) ) | **(Pending in the U.S. Bankruptcy Court, Northern District of Texas, Fort Worth Division)** |
| | ) | |
| | ) | SDNY |
| | ) | Miscellaneous Proceeding No. _____ |
| | ) | |

## MOTION OF QUAD-C PARTNERS IV, L.P. TO QUASH SUBPOENA OF JIFFY LUBE INTERNATIONAL, INC.

Quad-C Partners IV, L.P. ("Quad-C IV"), by and through its undersigned counsel, hereby files its Motion to Quash (the "Motion") the Subpoena (the "Subpoena") of Jiffy Lube International, Inc. ("JLI"), pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure and Rule 45 of the Federal Rules of Civil Procedure (the "Rules"), and respectfully states as follows:

### Preliminary Statement

With the Subpoena, JLI seeks to take the deposition of Quad-C IV pursuant to Rule 30(b)(6) in connection with certain motions under Section 365 of the Bankruptcy

Code in the jointly administered bankruptcy proceedings of Heartland Automotive

Holdings, Inc., et al. (the "Debtors"), now pending in the United States Bankruptcy Court

for the Northern District of Texas (the "Texas Bankruptcy Court").[1]

However, Quad-C IV is completely unrelated to the Debtors, has never had any

form of relationship with the Debtors and has no information regarding the Debtors. This

dearth of information makes it impossible for Quad-C IV to designate a representative to

testify on any of the topics requested in the Subpoena.

Assuming, *arguendo,* that Quad-C IV were to have relevant information regarding

the Debtors' pending Section 365 motions, the Subpoena is still defective because JLI has

noticed the deposition to take place at a location some 1500 miles from the place in

which Quad-C IV and its officers reside, are employed and regularly conduct business.

This is in clear violation of the 100-mile limit prescribed by Rule 45(c)(3)(A)(ii).

Moreover, even if Quad-C IV were able to produce a witness knowledgeable

about the topics in the Subpoena, the discovery requested by the Subpoena poses an

undue burden on Quad-C IV as the topics of the proposed deposition appear to be far

outside the realm of the pending Section 365 motions.

Accordingly, the Court should quash the defective and unduly burdensome

Subpoena.

### **Background**

1.      According to the Lease Motions (as defined herein), the Debtors filed

voluntary petitions seeking relief under chapter 11 of title 11 of the United States Code

---

[1] According to the Lease Motions (as defined herein), the Debtors are, collectively, the largest franchisee of Jiffy Lube franchises in the United States and operate over 400 Jiffy Lube locations in over 20 states pursuant to franchise agreements with JLI.

(the "Bankruptcy Code") on January 7, 2008 in the Texas Bankruptcy Court, Case No. 08-40047-dml-11, Judge Lynn presiding.[2]

2.      On June 27, 2008, the Debtors filed three Omnibus Motions Pursuant to 11 U.S.C. § 365(a) for Authority to Assume Certain Unexpired Leases of Nonresidential Real Property (collectively, the "Lease Motions"). A copy of the First Omnibus Lease Motion is attached hereto as <u>Exhibit A</u>.[3] The Lease Motions are scheduled for hearing in the Texas Bankruptcy Court on July 22, 2008.[4]

3.      On July 2, 2008, JLI served the Subpoena on an employee of an affiliate of Quad-C IV. A copy of the Subpoena is attached hereto as <u>Exhibit B</u>.

4.      Quad-C IV has never been a creditor of, an equity holder of, or had any relationship with any of the Debtors.[5]

### <u>RELIEF REQUESTED</u>

5.      By this Motion, Quad-C IV seeks entry of an order quashing the Subpoena because it is defective in at least three respects. First, the Subpoena requests a deposition from a non-party that has no information regarding the Lease Motions. Second, the Subpoena seeks a deposition in the Northern District of Texas, but was issued in this district in violation of Rule 45(a)(2)(B). Similarly, the Subpoena requires travel in excess

---

[2] All factual allegations made regarding the status of the Debtors' bankruptcy proceedings are made upon information and belief.

[3] Each of the omnibus lease motions appears identical, except for items relating specifically to individual landlords and costs to cure payment defaults for the leasehold interests.

[4] According to the Lease Motions, in addition to being the franchisor of Jiffy Lube stores, JLI is also a landlord for certain of the Debtors in approximately 80 of the more than 400 leases of non-residential real property at issue in the Lease Motions. It appears that the Debtors, by the Lease Motions, seek to assume the majority, if not all, of the leases under which JLI is the lessor.

[5] Upon information and belief, Quad-C Partners VI, L.P. ("Quad-C VI"), a limited partnership with a different general partner from that of Quad-C IV (but the same corporate advisor), has been the largest equity holder of Heartland Automotive Holdings, Inc. since 2002. Three (3) principals or employees of Quad-C VI are directors of Heartland Automotive Holdings, Inc. Neither Quad-C VI, nor any of the foregoing individuals, has any information relating to the Lease Motions which is not also in the possession of the Debtors. Upon information and belief, JLI is taking the Rule 30(b)(6) deposition of the Debtors on the Lease Motions on July 17, 2008.

of 100 miles as prohibited by Rule 45(c)(3)(A)(ii). Third, the Subpoena places an undue

and unsustainable burden on Quad-C IV as prohibited by Rule 45(c)(3)(A)(iv), because

the information sought is either duplicative of other pending discovery or is outside of the

scope of the Lease Motions.[6]


### *Quad-C IV has no information relevant to the Lease Motions.*

6.    The Court should quash the Subpoena because Quad-C IV simply has no

knowledge regarding the issues relevant to the Lease Motions.  A court should quash

discovery requests that are not likely to lead to the discovery of relevant evidence.  See In

re Flag Telecom Holdings, Ltd. Securities Litigation, 2006 WL 2642192 at *2 (S.D.N.Y.

Sept. 13, 2006).  Moreover, making a non-party appear at a deposition where it has no

relevant testimony to give would constitute an undue burden of the type prohibited by

Rule 45(c)(3)(A)(iv).  When a subpoena should not have been issued, "literally

everything done in response to it constitutes 'undue burden or expense' within the

meaning of Civil Rule 45(c)(1)."  Builders Ass'n of Greater Chicago, 2002 WL 1008455

at *4 (N.D. Ill. May 13, 2002).  In this instance, Quad-C IV has no information relevant

to the Lease Motions and JLI should not have issued the Subpoena.


### *The Subpoena is void or must be quashed as it was issued by the wrong court.*

7.    Rule 45(a)(2)(B) requires that a subpoena that requires attendance at a

deposition must issue from the court in the district where the deposition is to be taken.

FED.R.CIV.P. 45(a)(2)(B).  In the current matter, the Subpoena was issued by this Court,

---

[6] Quad-C IV is not a party to the Lease Motions or the Debtors' bankruptcy proceedings, does not consent
to the jurisdiction of the bankruptcy court, and hereby reserves its rights to file a motion to withdraw the
reference to the extent JLI seeks to compel Quad-C IV's appearance pursuant to an order of this Court.

but calls for the deposition to occur in the Northern District of Texas. A subpoena issued by an improper court is void. Kupritz v. Savannah College of Art & Design, 155 F.R.D. 84, 88 (E.D. Pa. 1994) (subpoena issued by wrong court is void); Zamani v. Carnes, 2008 WL 2127849 at *1 (N.D. Cal. May 19, 2008) (same); Monsanto Co. v. Victory Wholesale Grocers, 2008 WL 2066449 at *4 (E.D.N.Y. May 14, 2008) (subpoena quashed because issued from wrong court); Song v. Dreamtouch, Inc., 2001 WL 487413 at *8 (S.D.N.Y. May 8, 2001) (same). Accordingly, the Subpoena is void and should be quashed.

### *The Subpoena also violates the 100 mile requirement of Rule 45(c)(3)(A)(ii).*

8.      Rule 45(c)(3)(A)(ii) requires that the court issuing a subpoena must modify or quash a Subpoena that requires a non-party to appear at a deposition more than 100 miles from where he or she resides, is employed, or regularly transacts business in person. FED.R.CIV.P. 45(c)(3)(A)(ii); See M'Baye v. New Jersey Sports Production, Inc., 246 F.R.D. 205, 207 (S.D.N.Y. 2007). JLI's Subpoena calls for Quad-C IV to appear in Texas. Neither Quad-C IV nor its employees reside in, are employed in or regularly transact business in person within 100 miles of Dallas, Texas. Therefore, the Subpoena violates the 100 mile rule and should be quashed or modified to correct this defect.

### *Even if assumed to be compliant with the procedural requirements of Rule 45, the Subpoena is overly broad and puts an undue and unsustainable burden on Quad-C IV.*

9.      Rule 45(c)(3)(A)(iv) provides a basis for a motion to quash where the subpoena subjects the designee to an "undue burden." An evaluation of undue burden

requires a court to balance the burden to the subpoenaed party against the value of the information to be derived by the requesting party. Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). In determining whether a subpoena imposes an undue burden, courts balance a variety of factors including: relevance, the need of the requesting party for the requested information, the time period covered by the request, and the burden the request imposed. Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 53 (S.D.N.Y. 1996). In analyzing undue burden, courts afford non-parties "special protection" against invasive discovery requests. Cash Today of Texas, Inc. v. Greenberg, 2002 U.S. Dist. LEXIS 20694 (D. Del. 2002) (citing Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994)).

10.    A review of the facts in this case demonstrates that the Subpoena imposes an unsustainable burden on Quad-C IV. First, requests 1 through 8 of the Subpoena are unduly burdensome because, upon information and belief, the information these requests seek is duplicative of information in the possession of the Debtors, who are the movants under the Lease Motions and whose deposition is being taken by JLI in regard to the Lease Motions on July 17, 2008. Likewise, requests 9 through 12 of the Subpoena appear to be overly broad as these requests relate to matters that are well outside the scope of the Lease Motions and could only produce information irrelevant to the Lease Motions. Because the Subpoena requests information that is either duplicative of testimony that JLI will obtain from the Debtors or is outside the scope of what appears to be relevant to the Lease Motions, this Court should quash the Subpoena.

6

## CONCLUSION

WHEREFORE, Quad-C Partners IV, L.P., by counsel, respectfully requests that

the Court grant this Motion, enter an order determining that the Subpoena is void and/or

quashing the Subpoena, and grant such other and further relief as the Court deems

appropriate and just.


Dated:  July 14, 2008                          ____/s/___Patrick L. Hayden_____
New York, NY                                   James P. Ricciardi
                                               Patrick L. Hayden
                                               Dion W. Hayes
                                               McGUIREWOODS LLP
                                               1345 Avenue of the Americas, 7th Floor
                                               New York, New York 10105
                                               Telephone: (212) 548-2100
                                               Facsimile:  (212) 548-2150

                                               Counsel to Quad-C Partners IV, L.P.

James P. Ricciardi
Patrick L. Hayden
Dion W. Hayes
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, New York 10105
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

Counsel for Quad-C Partners IV, L.P.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| HEARTLAND AUTOMOTIVE HOLDINGS, | ) | Case No. 08-40047-dml-11 |
| INC., et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | **(Pending in the U.S. Bankruptcy** |
| | ) | **Court, Northern District of Texas,** |
| | ) | **Fort Worth Division)** |
| | ) | |
| | ) | SDNY |
| | ) | Miscellaneous Proceeding No. _____ |
| | ) | |

### CERTIFICATE OF SERVICE

I, Patrick L. Hayden, hereby certify that on the 14th of July 2008, I caused to be served a true and correct copy of the foregoing upon the address listed below by electronic mail and Federal Express.

Robin E. Phelan
Haynes & Boone LLP
901 Main St.
Suite 3100
Dallas, TX 75202
robin.phelan@haynesboone.com
*Counsel to Jiffy Lube International, Inc.*

_/s/_   Patrick L. Hayden_____

8

Exhibit A

Thomas E Lauria
State Bar No. 11998025
Gerard Uzzi
Lisa Thompson
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone:   (212) 819-8200
Facsimile:   (212) 354-8113

Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

ATTORNEYS OF THE DEBTORS AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| In re:<br><br>HEARTLAND AUTOMOTIVE HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11 Case<br><br>Case No. 08-40047 (dml-11)<br><br>Jointly Administered<br><br>Hearing Date and Time:<br>July 22, 2008 at 1:30 p.m. (CST)<br><br>Objection Deadline:<br>July 14, 2008 at 11:00 a.m. (CST) |

## DEBTORS' FIRST OMNIBUS MOTION PURSUANT TO
## 11 U.S.C. § 365(a) FOR AUTHORITY TO ASSUME CERTAIN
## UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

TO THE HONORABLE D. MICHAEL LYNN,
UNITED STATES BANKRUPTCY JUDGE:

Heartland Automotive Holdings, Inc. and its affiliated debtors (collectively, the "Debtors"), as debtors and debtors-in-possession, file this motion pursuant to section 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") for an order authorizing the assumption of certain unexpired leases of nonresidential real property (the "Motion"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Historically, a debtor who was party to an unexpired commercial real property lease was given until the end of its case to determine finally whether to assume or reject such lease in accordance with section 365 of the Bankruptcy Code. Among the rationale for providing a debtor with this flexibility was the inherent level of financial uncertainty that exists for every debtor until a plan is finally confirmed, regardless of the debtor's then current operating performance or well intentions. Fairly recent and somewhat untested amendments to the Bankruptcy Code appear, however, to substantially limit a debtor's flexibility with respect to when it ideally should make its determination to assume or reject its unexpired commercial real property leases, at least without the express written consent of the landlord. Accordingly, while these Debtors would prefer the additional time that preceding debtors enjoyed with respect to all of their leases, these Debtors are compelled to make certain determinations now well prior to confirmation of a plan of reorganization.

2.      Against this backdrop, the Debtors analyzed their leases. The Debtors attempted to to make their determinations to assume or not assume their leases based upon the current and anticipated circumstances confronting the estates. While the Debtors recognize that several issues require resolution, the Debtors have determined that the leases the Debtors seek to assume by this Motion (and the other motions to assume being filed concurrently herewith) represent valuable assets of their respective estates.

3.      As an initial matter, the Debtors developed three categories of leased locations: First, those locations that the Debtors determined were valuable assets of the estates; second, those locations that the Debtors determined had little to no value; and third, those locations that, if more time were available to make the determination, the resolution of certain issues, including the availability of potential landlord concessions, might affect the Debtors'

determination. With respect to the third category, the Debtors sought, and to a large extent received, written consent from the relevant landlords to extend the determination period to December 31, 2008. Of the landlords that refused to consent, the Debtors made the determinations based upon the information presently available to them and have either determined to seek to assume such leases or allow them to be deemed rejected. As a consequence, by this Motion and other motions filed concurrently herewith, the Debtors will (i) seek to assume 286 unexpired commercial real property leases, (ii) seek to assume, as amended, an additional 33 unexpired commercial real property leases, and (iii) seek to extend, with the written consent of the relevant landlords, the time period in which they must determine to assume 127 unexpired commercial real property leases. The Debtors have determined to permit 13 unexpired commercial real property leases to be deemed rejected.

4.     This is the Debtors' first omnibus motion to assume unexpired leases of non-residential real property. Pursuant to Bankruptcy Rule 6006(f)(6), omnibus motions to assume unexpired leases must be limited to no more than 100 unexpired leases. See Bankruptcy Rule 6006(f)(6). As a consequence, the Debtors are filing five (5) omnibus motions. With the exception of the exhibits annexed to such motions, which exhibits identify the leases to be assumed and the Debtors' determination of cure amounts owing, if any, each of the omnibus motions are largely identical.

## JURISDICTION

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**PROCEDURAL BACKGROUND**

6.     On January 7, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.     On January 17, 2008, the Office of the United States Trustee for the Northern District of Texas (the "US Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in these cases. No trustee or examiner has been requested or appointed in any of the Debtors' chapter 11 cases.

8.     Pursuant to an Order dated January 9, 2008, the Debtors' chapter 11 cases are being jointly administered.

**FACTUAL BACKGROUND**

9.     The Debtors, headquartered in Omaha, NE, are the largest franchisees of Jiffy Lube International, Inc. ("JLI") in the United States. The Debtors operate in excess of 400 quick-oil-change stores in 20 states across the Eastern, Midwestern and Western United States. Their broad range of products and services provide customers with a convenient way to perform preventative maintenance and fluid replacement services on their vehicles.

10.    The Debtors have operated Jiffy Lube stores (through its affiliated predecessor companies) since 1980. From 65 stores in 1995 to over 400 as of the Petition Date, the Debtors expanded through a combination of organic growth and strategic acquisitions. At nearly every store location, the Debtors lease both the building and land. These leases are unexpired and subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code (collectively, the "Unexpired Leases").

11.    On March 28, 2008, the Debtors filed a motion seeking authority, pursuant to section 365(d)(4) of the Bankruptcy Code, to extend by 90 days the time period within which the Debtors may assume or reject the Unexpired Leases (the "Assumption/Rejection Period") (Doc. No. 330).  By order dated May 5, 2008, the Court extended the Assumption/Rejection Period through and including August 4, 2008 (the "Assumption/Rejection Deadline").

## RELIEF REQUESTED

12.    By this Motion, the Debtors respectfully request the Court's authority, pursuant to section 365 of the Bankruptcy Code, to assume 80 of the Unexpired Leases (collectively, the "Designated Leases")[1].  Annexed hereto as **Exhibit "A"** is a list of the Designated Leases together with the cure amounts relating thereto.  In addition, because the Debtors are assuming the Designated Leases before the conclusion of these cases due to the deadline imposed by section 365(d)(4) of the Bankruptcy Code, the Debtors further request that this Court find that any assumption of a Designated Lease at this time is without prejudice to any other rights the Debtors and their estates may have with respect to such Designated Lease under the Bankruptcy Code or otherwise, including, without limitation, the right to assign or sell hereafter any such Lease pursuant to sections 363, 365(f) and/or 1123(b)(2), (4) of the Bankruptcy Code, and that all such rights are preserved.

**PARTIES RECEIVING THIS MOTION ARE ENCOURAGED TO REFER TO EXHIBIT A FOR A LISTING OF THE DESIGNATED LEASES, TOGETHER WITH THE NAMES OF THE RESPECTIVE PARTIES THERETO.**

---

[1]    The Debtors reserve the right to amend Exhibit A to remove a Designated Lease from the list of Unexpired Leases to be assumed at any time through the conclusion of the Hearing on this Motion.

## DEBTORS' LEASE ANALYSIS

13.     The Debtors, with the assistance of counsel and their restructuring advisors, reviewed each of their store locations and related leases to analyze both the legal and financial issues surrounding the assumption or rejection of any given lease. In making their decisions to assume or reject a lease, the Debtors analyzed the short term ramifications of assuming or rejecting a lease while certain contingencies remain unresolved as well as the potential long term impacts of any such decision on the Debtors depending upon how such contingencies are ultimately resolved.

14.     Certain of the Debtors' senior management, with the assistance of their restructuring advisors, Alvarez & Marsal, also analyzed each location's financial performance, as well as such factors as proximity to the Debtors' other store locations and the reasonableness of the rent expense for any given location. This quantitative analysis was supplemented by a review by the Debtors' regional and remaining senior management focusing on identifying stores where profitability could be improved with enhanced performance at the store level versus stores with declining demographics, poor facilities, or other adverse factors that would militate towards either rejecting a lease or slating it for possible marketing and sale.   The Debtors divided the stores into one of three categories: (i) locations that were profitable, or reasonably expected to become profitable, which supported an assumption of the related leases, (ii) locations that were not profitable or reasonably expected to become unprofitable, were located in close proximity to other, better locations or were located in remote areas outside of the Debtors' core markets and thus the related leases should either be rejected or marketed for sale, and (iii) locations that were marginal and thus the related leases should be assumed only if acceptable rent concessions could be obtained from the respective landlords.

15.    The Designated Leases covered by this Motion all fall within category (i) above.  Accordingly, when determining to assume a Designated Lease, the Debtors ultimately were required to conclude that a store associated with a Designated Lease is profitable or reasonably expected to become profitable, and indeed each of the stores associated with a Designated Lease is profitable for the Debtors.  The monthly rent for these locations averages only approximately 7% of the Debtors' total monthly sales.  The rental obligations associated with the Designated Leases, therefore, are modest and manageable for the Debtors given their revenues.

16.    The Debtors also performed a comprehensive review of the potential cure amounts owed in connection with the Designated Leases.  This process involved the review and analysis of invoices received, real estate tax data pulled from county taxing authorities, and the historical due date and payment trends for rent, real estate taxes and other items.  The cure costs are presented in 4 categories for easier reconciliation by the landlords:  Pre-petition Stub Rent, Pre-petition Percentage Rent, Real Estate Tax, and Other.  Pre-petition stub rent primarily involves rent due for the seven days in January prior the bankruptcy filing, while percentage rent includes 2007 year-end payments for rent on a percentage of sales basis where relevant.  Pre-petition real estate taxes are those taxes payable under the lease agreement for 2007 and the pre-petition period of 2008.  Other pre-petition items include fees related to common area maintenance, utilities, and other charges under the lease for the pre-petition period.  The aggregate cure amounts identified by the Debtors for the Designated Leases are approximately $1.5 million.

17.    The Debtors' advisors also engaged in discussions with advisors to the Committee and the senior secured lenders under the senior credit facility with Dymas Funding

Company, LLC (the "Senior Lenders") to apprise them of the Debtors' analysis and conclusions with respect to the leases and to elicit their input. The Debtors' advisors thereafter apprised the "H-1 Lenders" of the same, and, in particular, the Debtors' conclusion to close certain locations where the H-1 Lenders may have asserted a secured claim with respect to a particular lease or its location.

## BASIS FOR RELIEF

18.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The assumption or rejection of an unexpired lease or executory contract by a debtor is subject to review under the business judgment standard. Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1046-47 (5th Cir. 1985)); In re Wolflin Oil, L.L.C., 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) (approving assumption of unexpired leases and stating that "assumption of the lease must represent a proper exercise of business judgment" and the debtor "must ensure that any other party in an unexpired lease is made whole at the time of the debtor's assumption of said contract"); see also In re Mirant Corp., Case No. 03-46590, 2007 WL 2753277, at *7 (Bankr. N.D. Tex. Sept. 19, 2007) (confirming plan in which decisions regarding the assumption or rejection of executory contracts and unexpired leases were based on the debtors' reasonable exercise of sound business judgment).

19.      The business judgment test is not a strict standard, but merely requires a showing that either assumption or rejection of the contract at issue will benefit the debtor's estate. See NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982); cf Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an

executory contract "should be granted as a matter of course"). As such, the Court should defer to the business judgment of the debtor, unless bad faith or an abuse of discretion is shown. In re McCommas LFG, Case Nos. 07-32222, 07-32219, 2007 WL 4234139, at *14 (Bankr. N.D. Tex. Nov. 29, 2007) (citing In re Bildisco, 682 F.2d at 79) ("the business judgment rule as applied to a bankrupt's decision to [assume or reject] an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion"). Here, the Debtors have determined that the Designated Leases are valuable estate assets that will continue to provide value as the Debtors refine their business plan and ultimately effect a successful reorganization of their businesses. As such, the assumption of the Designated Leases is a proper exercise of the Debtors' business judgment.

20. In addition, section 365(b)(1) of the Bankruptcy Code sets forth the following requirements that a debtor in possession must satisfy if there has been a default in the unexpired lease before it may assume the lease. Specifically, section 365(b)(1) states that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the [debtor] may not assume such . . . lease unless, at the time of the assumption of such . . . lease, the [debtor] –
>
> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . . ;
>
> (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U. S.C. § 365(b)(1); see also In re Wolflin Oil, L.L.C., 318 B.R. at 396-397.

21.     Adequate assurance "is to be given a practical, pragmatic construction based upon . . . the circumstances of [the] case." In re PRK Enters., 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (internal quotations omitted); Carlisle Homes, Inc v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988). "Assurance of future performance is adequate if performance is likely (i.e. more probable than not) and the degree of assurance necessary to be deemed adequate falls considerably short of an absolute guaranty." In re PRK Enters., 235 B.R. at 603 (quotations omitted). "Courts have consistently determined whether a debtor offered adequate assurance of future performance by considering whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee." Richmond Leasing Co. v. Capital Bank, N.A., 726 F.2d 1303, 1310 (5th Cir. 1985).

22.     With respect to the Debtors' cure obligations, as required by section 365(b)(1)(A) of the Bankruptcy Code, the Debtors have made a good faith determination of the amounts, if any, required to satisfy all amounts due and owing under the Designated Leases and have listed such amounts as "Cure Amounts" on Exhibit A annexed hereto (collectively, the "Cure Amounts").

**ANY LANDLORD WHO DISPUTES THE RELEVANT CURE AMOUNT DETERMINED BY THE DEBTORS WITH RESPECT TO ITS LEASE OR DESIGNATED LEASES AND SEEKS TO CONSENSUALLY RESOLVE SUCH DISPUTE MAY CONTACT THE DEBTORS BY CALLING BARB WEBB IN THE DEBTORS' LEASE ACCOUNTING GROUP AT (402) 333-0990 x 327.**

If the Debtors are able to resolve the cure dispute with such party, the Debtors intend to amend, at the hearing to consider this Motion, the Cure Amounts listed on Exhibit A without the parties' need to file a formal objection.

10

**IF A PARTY DISAGREES WITH A CURE AMOUNT, IS UNABLE TO REACH A CONSENSUAL RESOLUTION WITH THE DEBTORS WITH RESPECT TO THE CURE DISPUTE AND FAILS TO FILE A TIMELY OBJECTION RELATING TO SUCH CURE AMOUNT, THE DEBTORS INTEND TO SEEK AN ORDER FROM THE COURT FINDING THAT THE DEBTORS' DETERMINATION OF SUCH CURE AMOUNT REPRESENTS THE CORRECT AMOUNTS OWING AND THE PAYMENT OF SUCH CURE AMOUNT WILL PROPERLY SATISFY THE DEBTORS' CURE OBLIGATIONS UNDER SECTION 365 OF THE BANKRUPTCY CODE.**

23.     The Debtors satisfy the requirement of providing adequate assurance of future performance to all parties to the Designated Leases in accordance with section 365(b)(1)(C) of the Bankruptcy Code given that the Debtors (i) are current on their post petition obligations under the Designated Leases and will remain current post assumption and (ii) anticipate generating positive cash flow from business operations for the foreseeable future allowing them to continue to meet their future financial obligations under the Designated Leases.

24.     Based on the foregoing, the Debtors submit that the requirements of section 365 of the Bankruptcy Code have been satisfied and request that the Motion be granted and the Debtors be authorized to assume the Designated Leases.

<u>**PRESERVATION OF RIGHTS**</u>

25.     Because the Debtors are assuming the Designated Leases before the conclusion of these cases due to the deadline imposed by section 365(d)(4) of the Bankruptcy Code, the Debtors believe it is appropriate to request that this Court find that the assumption of a Designated Lease at this time is without prejudice to any other rights the Debtors and their estates may have with respect to a Designated Lease under the Bankruptcy Code or otherwise, including without limitation the right subsequently to assign and sell any of the Designated Leases notwithstanding any provision in a Designated Lease that purports to restrict or limit, or

would have the effect, if enforced, or restricting or limiting, the ability to assign or sell such Designated Leases, in accordance with and to the fullest extent permitted by the Bankruptcy Code, including Bankruptcy Code sections 363, 365(f) and/or 1123(b)(2), (4). See, e.g., Matter of Federated Dep't Stores, Inc., 135 B.R. 941, 945 (Bankr. S.D. Ohio 1991) ("[A]n assumed contract may be assigned at a later date."); In re Bricker Sys., Inc., 44 B.R. 952, 955 (Bankr. E.D. Wis. 1984) ("There is absolutely nothing in the statute to indicate that Congress intended a substantially contemporaneous assignment or an assignment within a given time period following assumption."). Furthermore, as additional issues may arise during the pendency of these cases, the Debtors failure to raise or address any such potential issue herein, whether known or unknown at this time, should not be construed as a waiver of any right, argument or legal position with respect to the Designated Leases.

## CONTINGENT ASSIGNMENT AND ASSUMPTION AGREEMENTS

26.    The Debtors entered into agreements entitled "Contingent Assignment and Assumption Agreements" (the "CAAs") with respect to certain Designated Leases. The CAAs purport to grant to Jiffy Lube International of Maryland, Inc. ("Maryland")[2], an affiliate of the Debtors' franchisor, JLI, the right to cause an assignment to Maryland of the Debtors' rights under the relevant Designated Lease upon the occurrence of certain events, including a default under the relevant franchise agreement. The Debtors believe that Maryland's rights, if any, under the CAAs are unenforceable against the Debtors and reserve for themselves and their estates the right to seek separately appropriate relief from the Court with respect thereto. Nevertheless, in the interest of caution and for the avoidance of doubt, the Debtors hereby note

---

[2]      Upon information and belief, Maryland merged with JLI after the Petition Date.

that the assumption of any Designated Lease under this Motion does not include the assumption of any related CAA.

## NOTICE

27.    Notice of this Application has been provided to the parties on the Limited Service List pursuant to the Order of this Court entered on January 9, 2008 authorizing such notice, and to all parties required to receive notice pursuant to the terms of the Designated Leases. The Debtors submit that under the circumstances no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order in the form attached hereto as **Exhibit "B"** (i) authorizing the assumption of the Designated Leases pursuant to section 365 of the Bankruptcy Code and (ii) granting the Debtors such other and further relief as is just and proper.

Dated:  Fort Worth, Texas
       June 27, 2008

Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX  76102
(817) 877-8855

By /s/ Jeff P. Prostok
     Jeff P. Prostok

-and-

Thomas E Lauria
State Bar No. 11998025
Gerard Uzzi
Lisa Thompson
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has authorized Epiq Bankruptcy Solutions, LLC as service agent to cause to be served a true and correct copy of the foregoing document upon the parties listed below and upon all parties listed on the Limited Service List via first class mail on the 27th day of June, 2008 in accordance with the Federal Rules of Bankruptcy Procedure.

JLI of Maryland
PO Box 7247-6242
Philadelphia, PA 19170-6242

/s/ Jeff P. Prostok
Jeff P. Prostok

14

**Exhibit A**

# Exhibit A
# Heartland Automotive Services - First Omnibus Motion to Assume Leases

| Landlord Name, Address, and Store Number(s) with Address | | | Cure Costs | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Rent | % Rent | R/E Tax | Other | Total Cure Cost |

**JLI of Maryland**

PO BOX 7247-6242

PHILADELPHIA          PA     19170-6242

| | | | | Rent | % Rent | R/E Tax | Other | Total Cure Cost |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Store#: | 71 | | | $1,010.48 | $0.00 | $2,989.60 | $0.00 | **$4,000.08** |
| Address: | 1717 Sycamore View Rd. | | | | | | | |
| | Memphis | TN | 38134 | | | | | |
| Store#: | 73 | | | $451.61 | $0.00 | $3,532.58 | $0.00 | **$3,984.19** |
| Address: | 2911 Poplar Ave. | | | | | | | |
| | Memphis | TN | 38111 | | | | | |
| Store#: | 190 | | | $474.19 | $0.00 | $15,796.23 | $0.00 | **$16,270.42** |
| Address: | 5147 Golf Road | | | | | | | |
| | Skokie | IL | 60077 | | | | | |
| Store#: | 194 | | | $1,266.77 | $0.00 | $1,549.00 | $0.00 | **$2,815.77** |
| Address: | 1 East Roosevelt Rd | | | | | | | |
| | Lombard | IL | 60148 | | | | | |
| Store#: | 196 | | | $1,847.32 | $0.00 | $13,396.88 | $0.00 | **$15,244.20** |
| Address: | 866 E Dundee Road | | | | | | | |
| | Palatine | IL | 60067 | | | | | |
| Store#: | 219 | | | $1,129.03 | $0.00 | $18,675.50 | $0.00 | **$19,804.53** |
| Address: | 9401 West Golf Rd | | | | | | | |
| | Des Plaines | IL | 60016 | | | | | |
| Store#: | 256 | | | $1,340.27 | $0.00 | $0.00 | $0.00 | **$1,340.27** |
| Address: | 411 W. Ogden Ave. | | | | | | | |
| | Westmont | IL | 60559 | | | | | |
| Store#: | 447 | | | $868.45 | $0.00 | $14,682.51 | $0.00 | **$15,550.96** |
| Address: | 9756 S Cicero Ave #4 | | | | | | | |
| | Oak Lawn | IL | 60453 | | | | | |
| Store#: | 482 | | | $1,729.72 | $0.00 | $0.00 | $0.00 | **$1,729.72** |
| Address: | 3295 Ogden Ave | | | | | | | |
| | Lisle | IL | 60532 | | | | | |

| Landlord Name, Address, and Store Number(s) with Address | | | Rent | % Rent | Cure Costs | | Total Cure Cost |
|---|---|---|---|---|---|---|---|
| | | | | | R/E Tax | Other | |
| Store#: | 495 | | $2,442.23 | $0.00 | $2,617.93 | $0.00 | $5,060.16 |
| Address: | 539 N 2nd St | | | | | | |
| | El Cajon | CA    92012 | | | | | |
| Store#: | 496 | | $1,938.10 | $0.00 | $69.10 | $42.44 | $2,049.64 |
| Address: | 11703 W 63 St | | | | | | |
| | Shawnee | KS    66203 | | | | | |
| Store#: | 548 | | $1,522.38 | $0.00 | $253.10 | $577.14 | $2,352.62 |
| Address: | 3120 Excelsior Blvd | | | | | | |
| | Minneapolis | MN    55416 | | | | | |
| Store#: | 552 | | $2,174.70 | $0.00 | $35,876.10 | $0.00 | $38,050.80 |
| Address: | 3349 W 183rd St | | | | | | |
| | Homewood | IL    60430 | | | | | |
| Store#: | 607 | | $2,668.02 | $0.00 | $83.33 | $0.00 | $2,751.35 |
| Address: | 2255 Fairview Road | | | | | | |
| | Costa Mesa | CA    92627-1642 | | | | | |
| Store#: | 613 | | $1,706.40 | $0.00 | $0.00 | $0.00 | $1,706.40 |
| Address: | 2139 Zumbehl Rd | | | | | | |
| | St Charles | MO    63303 | | | | | |
| Store#: | 753 | | $943.87 | $0.00 | $8,718.02 | $0.00 | $9,661.89 |
| Address: | 4416 So Kingshighway | | | | | | |
| | St Louis | MO    63109 | | | | | |
| Store#: | 759 | | $1,937.42 | $0.00 | $240.94 | $2,021.07 | $4,199.43 |
| Address: | 3232 Glenview Rd | | | | | | |
| | Glenview | IL    60025 | | | | | |
| Store#: | 760 | | $1,850.69 | $0.00 | $11,093.88 | $378.74 | $13,323.31 |
| Address: | 12621 Research Blvd | | | | | | |
| | Austin | TX    78759 | | | | | |
| Store#: | 831 | | $2,231.21 | $0.00 | $4,329.91 | $0.00 | $6,561.12 |
| Address: | 5540 Lake Murray Blvd | | | | | | |
| | La Mesa | CA    91942 | | | | | |
| Store#: | 850    Ground Lease Only | | $1,063.50 | $0.00 | $5,305.49 | $21.27 | $6,390.26 |
| Address: | 4630 E. Broadway Boulevard | | | | | | |
| | Tucson | AZ    85711-3512 | | | | | |
| Store#: | 867 | | $1,664.33 | $0.00 | $14,036.96 | $0.00 | $15,701.29 |
| Address: | 4504 Lemay Ferry Rd | | | | | | |
| | Mehlville | MO    63129 | | | | | |

| Landlord Name, Address, and Store Number(s) with Address | | | | Cure Costs | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Rent | % Rent | R/E Tax | Other | Total Cure Cost |
| Store#: | 897 | | | $1,643.42 | $0.00 | $2,774.31 | $0.00 | **$4,417.73** |
| Address: | 593 E ST | | | | | | | |
| | Chula Vista | CA | 91910 | | | | | |
| Store#: | 924 | | | $1,948.56 | $0.00 | $10,877.55 | $0.00 | **$12,826.11** |
| Address: | 11944 Dorsett Rd | | | | | | | |
| | Maryland Heights | MO | 63043 | | | | | |
| Store#: | 990 | | | $2,360.35 | $0.00 | $0.00 | $0.00 | **$2,360.35** |
| Address: | 726 West Main | | | | | | | |
| | West Dundee | IL | 60118 | | | | | |
| Store#: | 1019 | | | $3,333.16 | $0.00 | $109.51 | $0.00 | **$3,442.67** |
| Address: | 2651 Garnet Ave | | | | | | | |
| | San Diego | CA | 92109 | | | | | |
| Store#: | 1046 | | | $1,141.90 | $0.00 | $0.00 | $0.00 | **$1,141.90** |
| Address: | 15849 Manchester Rd | | | | | | | |
| | Ellisville | MO | 63011 | | | | | |
| Store#: | 1067 | | | $1,860.65 | $0.00 | $9,649.81 | $0.00 | **$11,510.46** |
| Address: | 7210 Watson Rd | | | | | | | |
| | Shrewsbury | MO | 63119 | | | | | |
| Store#: | 1092 | | | $634.33 | $0.00 | $115.02 | $62.04 | **$811.39** |
| Address: | 605 S. Sprague Avenue | | | | | | | |
| | Tacoma | WA | 98405-3056 | | | | | |
| Store#: | 1095 | | | $532.10 | $0.00 | $95.89 | $76.57 | **$704.56** |
| Address: | 10415 Holman Road NW | | | | | | | |
| | Seattle | WA | 98133-9145 | | | | | |
| Store#: | 1096 | | | $1,374.82 | $0.00 | $149.45 | $0.00 | **$1,524.27** |
| Address: | 1020 Northgate Way | | | | | | | |
| | Seattle | WA | 98125 | | | | | |
| Store#: | 1097 | | | $660.32 | $0.00 | $4,314.28 | $0.00 | **$4,974.60** |
| Address: | 6001 196th Street SW | | | | | | | |
| | Lynnwood | WA | 98036-5981 | | | | | |
| Store#: | 1100 | | | $1,094.60 | $0.00 | $26,263.41 | $0.00 | **$27,358.01** |
| Address: | 17 West 620 Butterfield Rd | | | | | | | |
| | Oakbrook | IL | 60181 | | | | | |
| Store#: | 1109 | | | $1,252.15 | $0.00 | $194.10 | $0.00 | **$1,446.25** |
| Address: | 10510 Main Street | | | | | | | |
| | Bellevue | WA | 98004-5903 | | | | | |

| Landlord Name, Address, and Store Number(s) with Address | | | | Cure Costs | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Rent | % Rent | R/E Tax | Other | Total Cure Cost |
| Store#: | 1175 | | | $1,889.62 | $0.00 | $3,629.55 | $0.00 | $5,519.17 |
| Address: | 13803 Pacific Ave So | | | | | | | |
| | Tacoma | WA | 98444 | | | | | |
| Store#: | 1313 | | | $2,204.64 | $0.00 | $1.88 | $1,234.67 | $3,441.19 |
| Address: | 490 W Central Street | | | | | | | |
| | Franklin | MA | 02308 | | | | | |
| Store#: | 1684 | | | $960.58 | $0.00 | $15,640.57 | $0.00 | $16,601.15 |
| Address: | 630 N. Graham St. | | | | | | | |
| | Memphis | TN | 38122 | | | | | |
| Store#: | 1685 | | | $1,182.32 | $0.00 | $4,592.51 | $0.00 | $5,774.83 |
| Address: | 7020 Winchester Rd. | | | | | | | |
| | Memphis | TN | 38125 | | | | | |
| Store#: | 1686 | | | $1,256.16 | $0.00 | $7,279.20 | $0.00 | $8,535.36 |
| Address: | 2889 Bartlett Blvd. | | | | | | | |
| | Memphis | TN | 38134 | | | | | |
| Store#: | 1687 | | | $812.90 | $0.00 | $4,920.50 | $0.00 | $5,733.40 |
| Address: | 1135 E. Shelby Dr. | | | | | | | |
| | Memphis | TN | 38116 | | | | | |
| Store#: | 1738 | | | $878.63 | $0.00 | $336.45 | $0.00 | $1,215.08 |
| Address: | 2100 Plum Grove Rd | | | | | | | |
| | Rolling Meadow | IL | 60008 | | | | | |
| Store#: | 1874 | | | $1,286.33 | $0.00 | $1,919.98 | $0.00 | $3,206.31 |
| Address: | 1574 Palm Ave | | | | | | | |
| | Imperial Beach | CA | 92154-1016 | | | | | |
| Store#: | 1942 | | | $1,149.66 | $0.00 | $6,787.20 | $0.00 | $7,936.86 |
| Address: | 7990 Patriot Dr. | | | | | | | |
| | Cordova | TN | 38018 | | | | | |
| Store#: | 2031 | | | $779.03 | $0.00 | $0.00 | $0.00 | $779.03 |
| Address: | 1409 North Eastern Avenue | | | | | | | |
| | Las Vegas | NV | 89101 | | | | | |
| Store#: | 2037 | | | $831.07 | $0.00 | $54.28 | $0.00 | $885.35 |
| Address: | 2020 East Sahara Avenue | | | | | | | |
| | Las Vegas | NV | 89104 | | | | | |
| Store#: | 2049 | | | $497.29 | $0.00 | $366.54 | $73.07 | $936.90 |
| Address: | 5912 100th Street SW | | | | | | | |
| | Lakewood | WA | 98499-2731 | | | | | |

| Landlord Name, Address, and Store Number(s) with Address | | | | Cure Costs | | | |
|---|---|---|---|---|---|---|---|
| | | | | Rent | % Rent | R/E Tax | Other | Total Cure Cost |
| Store#: | 2051 | | | $855.35 | $0.00 | $3,670.17 | $0.00 | **$4,525.52** |
| Address: | 251 NE 45th St | | | | | | | |
| | Seattle | WA | 98105 | | | | | |
| Store#: | 2054 | | | $950.68 | $0.00 | $278.57 | $1,664.93 | **$2,894.18** |
| Address: | 12427 NE 124th Street | | | | | | | |
| | Kirkland | WA | 98034-4022 | | | | | |
| Store#: | 2055 | | | $1,134.79 | $0.00 | $717.96 | $130.35 | **$1,983.10** |
| Address: | 4070 Guide Meridian | | | | | | | |
| | Bellingham | WA | 98226 | | | | | |
| Store#: | 2058 | | | $540.37 | $0.00 | $62.19 | $0.00 | **$602.56** |
| Address: | 5121 Point Fosdick Drive NW | | | | | | | |
| | Gig Harbor | WA | 98335-1716 | | | | | |
| Store#: | 2065 | | | $548.63 | $0.00 | $1,363.92 | $0.00 | **$1,912.55** |
| Address: | 1475 Marvin Road NE | | | | | | | |
| | Lacey | WA | 98516-5768 | | | | | |
| Store#: | 2070 | | | $607.12 | $0.00 | $2,903.39 | $0.00 | **$3,510.51** |
| Address: | 12807 4th Avenue W | | | | | | | |
| | Everett | WA | 98204-6340 | | | | | |
| Store#: | 2073 | | | $688.86 | $0.00 | $0.00 | $0.00 | **$688.86** |
| Address: | 7204 NE Bothell Way | | | | | | | |
| | Kenmore | WA | 98028-3518 | | | | | |
| Store#: | 2074 | | | $564.52 | $8,636.75 | $155.22 | $457.95 | **$9,814.44** |
| Address: | 309 S Washington | | | | | | | |
| | Kent | WA | 98032 | | | | | |
| Store#: | 2075 | | | $925.81 | $0.00 | $223.89 | $0.00 | **$1,149.70** |
| Address: | 4902 25th NE | | | | | | | |
| | Seattle | WA | 98105 | | | | | |
| Store#: | 2077 | | | $559.01 | $0.00 | $348.57 | $0.00 | **$907.58** |
| Address: | 2025 4th Avenue | | | | | | | |
| | Seattle | WA | 98121-2414 | | | | | |
| Store#: | 2078 | | | $1,092.86 | $0.00 | $2,244.99 | $0.00 | **$3,337.85** |
| Address: | 23610 Pacific Hwy S | | | | | | | |
| | Kent | WA | 98032 | | | | | |
| Store#: | 2079 | | | $1,030.81 | $0.00 | $1,402.73 | $0.00 | **$2,433.54** |
| Address: | 13654 1st Ave S | | | | | | | |
| | Burien | WA | 98168 | | | | | |

| Landlord Name, Address, and Store Number(s) with Address | | | Cure Costs | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Rent | % Rent | R/E Tax | Other | Total Cure Cost |
| Store#: | 2080 | | $1,103.74 | $0.00 | $88.78 | $0.00 | $1,192.52 |
| Address: | 1616 Freeway Dr | | | | | | |
| | Mount Vernon | WA   98273 | | | | | |
| Store#: | 2082 | | $1,596.90 | $0.00 | $151.16 | $0.00 | $1,748.06 |
| Address: | 10022 Holman Raod NW | | | | | | |
| | Seattle | WA   98177-4921 | | | | | |
| Store#: | 2083 | | $544.51 | $0.00 | $0.00 | $0.00 | $544.51 |
| Address: | 3515 Kitsap Way | | | | | | |
| | Bremerton | WA   98312-2639 | | | | | |
| Store#: | 2215 | | $835.48 | $0.00 | $1,783.09 | $0.00 | $2,618.57 |
| Address: | 1603 E. Colorado Boulevard | | | | | | |
| | Pasadena | CA   91106-2105 | | | | | |
| Store#: | 2217 | | $374.84 | $0.00 | $4,228.30 | $0.00 | $4,603.14 |
| Address: | 10201 W. 75th Street | | | | | | |
| | Overland Park | KS   66204 | | | | | |
| Store#: | 2219 | | $903.23 | $0.00 | $5,169.04 | $0.00 | $6,072.27 |
| Address: | 3209 W. 190th Street | | | | | | |
| | Torrance | CA   90504-5902 | | | | | |
| Store#: | 2224 | | $745.16 | $0.00 | $1,680.82 | $0.00 | $2,425.98 |
| Address: | 9655 Valley Boulevard | | | | | | |
| | Rosemead | CA   91770-1509 | | | | | |
| Store#: | 2227 | | $300.69 | $0.00 | $2,334.40 | $0.00 | $2,635.09 |
| Address: | 6305 State Hwy 303 NE | | | | | | |
| | Bremerton | WA   98311-3712 | | | | | |
| Store#: | 2229 | | $722.13 | $0.00 | $5,647.49 | $74.13 | $6,443.75 |
| Address: | 19210 Hyw 410 | | | | | | |
| | Bonney Lake | WA   98391 | | | | | |
| Store#: | 2230 | | $229.89 | $0.00 | $58.73 | $0.00 | $288.62 |
| Address: | 41 Kemp Street | | | | | | |
| | Port Angeles | WA   98362 | | | | | |
| Store#: | 2232 | | $1,455.55 | $0.00 | $2,920.42 | $0.00 | $4,375.97 |
| Address: | 4000 SW Alaska St | | | | | | |
| | Seattle | WA   98116 | | | | | |
| Store#: | 2251 | | $439.19 | $0.00 | $3,275.61 | $0.00 | $3,714.80 |
| Address: | 8721 Blue Ridge Blvd. | | | | | | |
| | Kansas City | MO   64138 | | | | | |

| Landlord Name, Address, and Store Number(s) with Address | | | Rent | % Rent | Cure Costs R/E Tax | Other | Total Cure Cost |
|---|---|---|---|---|---|---|---|
| Store#: | 2445 | | $1,528.22 | $0.00 | $0.00 | $2,826.57 | **$4,354.79** |
| Address: | 3896 N. Oracle Road | | | | | | |
| | Tucson | AZ    85705-3227 | | | | | |
| Store#: | 2446 | | $965.91 | $0.00 | $3,144.25 | $19.32 | **$4,129.48** |
| Address: | 3219 N. Campbell Avenue | | | | | | |
| | Tucson | AZ    85719-2304 | | | | | |
| Store#: | 2448 | | $843.58 | $0.00 | $2,594.14 | $16.87 | **$3,454.59** |
| Address: | 405 W. Valencia Road | | | | | | |
| | Tucson | AZ    85706-7634 | | | | | |
| Store#: | 2501 | | $1,357.55 | $0.00 | $17,265.54 | $0.00 | **$18,623.09** |
| Address: | 215 W Rand Rd | | | | | | |
| | Arlington Heights | IL    60004 | | | | | |
| Store#: | 2504 | | $1,464.66 | $0.00 | $27,661.34 | $0.00 | **$29,126.00** |
| Address: | 6140 W Ogden Ave | | | | | | |
| | Cicero | IL    60804 | | | | | |
| Store#: | 2507 | | $1,571.83 | $0.00 | $19,311.85 | $0.00 | **$20,883.68** |
| Address: | 6645 W 95th St | | | | | | |
| | Oak Lawn | IL    60453 | | | | | |
| Store#: | 2574 | | $1,569.07 | $0.00 | $126.84 | $0.00 | **$1,695.91** |
| Address: | 32836 Pacific Hwy S | | | | | | |
| | Federal Way | WA    98003 | | | | | |
| Store#: | 2578 | | $696.01 | $0.00 | $2,957.96 | $0.00 | **$3,653.97** |
| Address: | 14710 Aurora Ave N | | | | | | |
| | Shoreline | WA    98133 | | | | | |
| Store#: | 2584 | | $947.64 | $0.00 | $3,073.26 | $0.00 | **$4,020.90** |
| Address: | 3601 Broadway | | | | | | |
| | Everett | WA    98201 | | | | | |
| Store#: | 2665 | | $1,016.13 | $0.00 | $90.32 | $27.21 | **$1,133.66** |
| Address: | 3420 South Rainbow | | | | | | |
| | Las Vegas | NV    89146 | | | | | |
| Store#: | 2667 | | $1,035.52 | $0.00 | $4,478.76 | $0.00 | **$5,514.28** |
| Address: | 333 South Decatur | | | | | | |
| | Las Vegas | NV    89107 | | | | | |

TOTAL LEASES INCLUDED:          80

**<u>Exhibit B</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 Case |
| HEARTLAND AUTOMOTIVE HOLDINGS, INC., et al., | Case No. 08-40047 (dml-11) |
| Debtors. | Jointly Administered |

## ORDER GRANTING DEBTORS' FIRST OMNIBUS MOTION PURSUANT TO 11 U.S.C. § 365 FOR AUTHORITY TO ASSUME LEASES OF NONRESIDENTIAL REAL PROPERTY

Upon consideration of the motion, dated June 27, 2008 (the "Motion"),[1] of

Heartland Automotive Holdings, Inc. and its affiliated debtors (collectively, the "Debtors"), as

debtors in possession, for entry of an order pursuant to section 365(a) of title 11 of the United

States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code,") authorizing the Debtors to

assume certain unexpired leases of nonresidential real property (the Designated Leases as set

forth in the Motion); and it appearing that the Court has jurisdiction over this matter; and it

appearing that notice of the Motion as set forth therein is sufficient, and that no other or further

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates and creditors; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to section 365(a) of the Bankruptcy Code, the Debtors are authorized to assume each Designated Lease as set forth on Exhibit A attached to the Motion; and it is further

ORDERED that the Debtors are authorized to pay each Cure Amount included on Exhibit A to the Motion; and it is further

ORDERED that pursuant to section 365(b)(1)(A) of the Bankruptcy Code, the payment of a Cure Amount is sufficient to cure all defaults that may exist under the related Designated Lease; and it is further

ORDERED that pursuant to section 365(b)(1)(C) of the Bankruptcy Code, the Debtors have satisfied their obligation to provide parties to each Designated Lease with adequate assurance of future performance; and it is further

ORDERED that the relief granted in this Order is without prejudice to any other rights the Debtors and their estates may have with respect to a Designated Lease under the Bankruptcy Code or otherwise, including without limitation the right subsequently to assign and sell any of the Designated Leases, notwithstanding any provision in a Designated Lease that purports to restrict or limit, or would have the effect, if enforced, of restricting or limiting, the ability to assign or sell such Designated Leases, in accordance with and to the fullest extent permitted by the Bankruptcy Code, including Bankruptcy Code sections 363, 365(f) and/or 1123(b)(2), (4); and it is further

ORDERED that the Debtors shall be deemed to have not waived any right, argument or legal position with respect to the Designated Leases by not having raised or addressed any issue or potential issue in the Motion, whether known or unknown at this time; and it is further

ORDERED that this Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or in relation to the implementation of this Order.

### # # End of Order # # #

**PREPARED BY:**

Jeff P. Prostok
State Bar No. 16352500
FORSHEY &PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
(817) 877-8855

-and-

Thomas E Lauria
State Bar No. 11998025
Gerard Uzzi
Lisa Thompson
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

**Exhibit B**

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

SOUTHERN _____ District of _NEW YORK_

In re   HEARTLAND AUTOMOTIVE HOLDINGS, INC., et al.
               Debtor

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

Case No. *   08-40047

Chapter   11

Pending in the United States Bankruptcy Court
Northern District of Texas

To:   Quad-C Partners IV, L.P.
     Attn: Tony Ignaczak, President
     156 West 56th Street, Suite 2400
     New York, NY 10019

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Haynes and Boone, LLP<br>901 Main Street, Suite 3100<br>Dallas, TX 75202 | July 18, 2008 at 1:00 p.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | | DATE |
|---|---|---|
| *[signature]* | Attorney for Jiffy Lube International, Inc.<br>and Pennzoil-Quaker State Company d/b/a<br>Sopus Products | July 1, 2008 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Robin E. Phelan, Haynes and Boone, LLP, 901 Main Street, Suite 3100, Dallas, TX 75202   (214) 651-5612

\* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                              DATE                                    SIGNATURE OF SERVER

                                                                       _____
                                                                       ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT "A"

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| HEARTLAND AUTOMOTIVE HOLDINGS, INC., | ) | Case No. 08-40047 (dml-11) |
| et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVES OF
### QUAD-C PARTNERS IV, L.P.

TO:   Bryan J. Wick and Kerry C. Peterson, WICK PHILLIPS, LLP, 2100 Ross Avenue, Suite 950, Dallas, Texas 75201, (214) 692-6200, counsel of record for Quad-C Partners IV, L.P.

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 30(b)(6), made applicable to the pending matter by Fed. R. Bankr. P. 9014, Jiffy Lube International, Inc. ("JLI") will take the deposition of the Designated Representatives of the Quad-C Partners IV, L.P. ("Quad-C").

The deposition will be conducted before an officer designated or appointed under Rule 28 of the Federal Rules of Civil Procedure, and will be conducted on July 18, 2008, at 1:00 o'clock p.m. (Central US), at the offices of Haynes and Boone, LLP, 901 Main Street Suite 3100, Dallas, Texas 75202 (or such other time and place as may be agreed to by JLI and the Debtors).  The deposition will be taken before a court reporter and will be recorded by stenographic means. The deposition may be videotaped.  The deposition will continue from day to day until it has been completed.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Quad-C must designate one or more officers, directors, or managing agents, or other persons ("Designated Representatives") to testify on behalf of Quad-C with regard to all matters known or reasonably available to Quad-C on each of the following topics:

D_1658108_2.DOC                                                                 Page 1

## Rule 30(b)(6) Topics

1. All issues related to any and all motions of any of the Debtors for entry of an orders pursuant to section 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. authorizing the Debtors to assume certain unexpired leases of non-residential real property as defined as Omnibus Assumption Motions in the Order Scheduling Hearing Date and Objection Deadline in Respect of Debtors' Omnibus Motions to Assume Certain Unexpired Leases of Nonresidential Real Property, Docket No. 505.

2. The Debtors' current and historical finances.

3. The Debtors' business plan and financial projections.

4. The Debtors' communications with and presentations to creditors.

5. The Debtors' debt instruments and performance thereunder.

6. The Debtors' analysis of a possible exit strategy from the JLI franchise system.

7. The Debtors' efforts to raise capital or obtain financing.

8. The skill, experience, and knowledge of Debtors' management regarding the Debtors' operations.

9. Quad-C's plans regarding investment in the Debtors' business or financing of the Debtor's operations.

10. Quad-C's expectation regarding treatment of its equity interest in the Debtors in any plan of reorganization.

11. All payments, dividends, and transfers of any kind from the Debtors to Quad-C and the circumstances surrounding same.

12. Anticipated claims by Quad-C and its affiliates against the Debtors, including any claims for indemnification.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served on the parties listed below, pursuant to the Federal Bankruptcy Rules, on the 1st day of July, 2008 as follows:

Bryan J. Wick          (via hand delivery)
Kerry C. Peterson
WICK PHILLIPS, LLP
2100 Ross Avenue, Suite 950
Dallas, Texas 75201
(214) 692-6200
bryan.wick@wickphillips.com
kerry.peterson@wickphillips.com

Jeff P. Prostok        (via hand delivery)
FORSHEY &PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
(817) 877-8855
jprostok@forsheyprostok.com

Thomas E Lauria        (via email and overnight mail)
Gerard Uzzi
Lisa Thompson
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200
tlauria@whitecase.com
guzzi@whitecase.com
lthompson@whitecase.com

Andrew M. Troop        (via U.S. first class mail)
Ingrid Bagby
Evan R. Fleck
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, New York 10282

Joseph J. Wielebinski (via U.S. first class mail)
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659

Robin E. Phelan